Marcus L. WATERS, Plaintiff,

v.

Gary BASS, et al., Defendants.

No. CIV.A.03–1387–AM.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 12, 2004.

Marcus L. Waters, Waverly, VA, pro se.

*MEMORANDUM OPINION*

ELLIS, District Judge.

Marcus L. Waters ("Waters"), a Virginia inmate, filed this action *pro se* under 42 U.S.C. § 1983, alleging that his constitutional rights have been violated (1) because he has not been transferred from the Virginia Beach City Jail ("VBCJ") to the Virginia Department of Corrections ("VDOC"); and (2) because the VBCJ charges him one dollar per day as a room and board fee, a charge not levied on federal detainees. Both claims fail to state a claim upon which relief can be granted, and must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Section 1915A authorizes the dismissal of prisoner complaints that are frivolous, malicious, or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Frivolous complaints are those that are based on "inarguable legal conclusion[s]" or "fanciful factual allegation[s]." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (examining identical language of predecessor statute to § 1915A). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker*, 9 F.Supp.2d 641, 642 (E.D.Va.1998). Thus, under § 1915A, as under Rule 12(b)(6), the facts alleged in the complaint are presumed true, and the complaint should be dis-

missed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### I. Transfer to VDOC

In his complaint, Waters states that he is incarcerated at the VBCJ and has been incarcerated at this and other local jails for more than one year.[1] He argues he should have been transferred to a VDOC facility promptly and, he further claims that as a result of being incarcerated in local jails, he has been denied various amenities typically available at the VDOC facilities. Specifically, he claims that the amenities he has been denied as a result of being kept in local jails include: contact visits; educational and vocational programs; prison employment; and, an increased opportunity to earn good time credits.

The dispositive response to Waters' claim is the well-established principle that an inmate has no constitutional right to be housed in any particular prison. *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Khaliq v. Angelone,* No. 02–7365, 2003 WL 21689152 (4th Cir.2003) (unpublished). Virginia's prison transfer regulations do not create any liberty interest in a specific housing assignment, as prison officials have, and reasonably must have, broad discretion under the regulations to determine the facility at which an inmate is housed. *See Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (no liberty interest created under law prior to *Sandin*). The transfer of an inmate, even for punitive reasons, is within the range of confinement justified by a prison sentence. *Sandin,* 515 U.S. at 485, 115 S.Ct. 2293. Therefore, no due process rights are implicated by routine housing assignments and transfers, or absence thereof. *See Cochran v. Morris,* 73 F.3d 1310, 1318 (4th Cir.1996) (holding that VDOC's interstate transfer regulations are routine and create no liberty interest in any transfer); *accord Sandin,* 515 U.S. at 485, 115 S.Ct. 2293; *Olim,* 461 U.S. 238, 103 S.Ct. 1741; *Meachum,* 427 U.S. 215, 96 S.Ct. 2532.

Although Waters has no constitutional right to a transfer or to be housed in a VDOC facility, he does have constitutionally protected rights to certain basic amenities such as adequate food,[2] exercise,[3] and medical care[4] in whatever facility he is confined. Yet, Waters alleges no deprivation of these basic amenities. Instead, he claims a constitutional right to various

---

**1.** Sometime after the filing of his complaint, Waters was apparently transferred to Sussex I State Prison, a VDOC facility. This transfer moots his claims for declaratory and injunctive relief. *See Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991) (addressing the merits of a prisoner's claim for monetary damages despite transfer to a new facility). It does not moot his claim for monetary damages based on the failure to transfer and hence this aspect of the transfer claim is subject to § 1915A and Rule 12(b)(6) scrutiny.

**2.** *See Bolding v. Holshouser,* 575 F.2d 461, 465 (4th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133, (1978) (holding that failure to provide adequate sanitary food service facilities establishes a cognizable claim).

**3.** *See Mitchell v. Rice,* 954 F.2d 187 (4th Cir.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 299, 121 L.Ed.2d 222 (1992) (holding that denial of out-of-cell exercise for an extended period violates the Eighth Amendment).

**4.** *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding that deliberate indifference to a serious medical need establishes an Eighth Amendment violation).

privileges such as contact visits, educational programs, prison employment, and an increased opportunity to earn good time credits. The short and dispositive answer to Waters' claim in these respects is that these are not constitutionally required amenities for inmates serving prison sentences.

It follows, therefore, that Waters' first claim is without merit and must be dismissed.

## II. Room and Board Fee

Next, Waters claims that the one dollar per day room and board fee charged by the VBCJ pursuant to VA. CODE § 53.1–131.3 violates his constitutional rights. This recently-enacted statute authorizes sheriffs and jail superintendents to establish programs to charge inmates a reasonable room and board fee, not to exceed one dollar ($1.00) per day.[5] Virginia is not alone in allowing a fee assessment to cover the costs of incarceration; it appears that at least sixteen states[6] have enacted laws authorizing local jails to charge inmates for all or part of the county's costs of room and board and other basic services. Many statutes specifically authorize deductions from an inmate's wages or inmate account to recoup a portion of the costs of incarceration.[7] Federal law also allows deductions from a federal prisoner's wages for reasonable room and board fees. 17 U.S.C. § 1761(c)(2)(B). Additionally, when assessing a fine for an individual federal criminal defendant, district court judges are required to consider the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S. Sentencing Commission, *Guidelines Manual*, § 5E1.2(d)(7) (Nov.2003).

■ On July 1, 2003, acting pursuant to the Virginia statute, the VBCJ implemented its fee program by issuing a Policy and Procedure General Order ("General Order") establishing guidelines for collecting payment of costs associated with a prisoner's keep.[8] Specifically, the General Order

---

**5.** Section 53.1–131.3 provides as follows:

Any sheriff or jail superintendent may establish a program to charge inmates a reasonable fee, not to exceed $1 per day, to defray the costs associated with the prisoners' keep. The Board shall develop a model plan and adopt regulations for such program, and shall provide assistance, if requested, to the sheriff or jail superintendent in the implementation of such program. Such funds shall be retained in the locality where the funds were collected and shall be used for general jail purposes.
VA. CODE § 53.1–131.3 (2003).

**6.** National Institute of Corrections, *Fees Paid by Jail Inmates: Findings from the Nation's Largest Jails*, SPECIAL ISSUES IN CORRECTIONS, Feb. 1997, at 6 ("*Fees Paid by Jail Inmates*") available at http://nici c.org/Resources/Supplemental/PubDetails.aspx?recordID=54.

**7.** Some state statutes allow correctional facilities to recover a portion of the costs of incarceration. *See, e.g.*, ALA. CODE § 14–8–6 (2003);

ARIZ REV STAT. § 31–121 (2003) (authorizing recovery of costs of prisoner meals); ARK CODE § 12–29–504 (2003); FLA. STAT. § 960.293(2) (2003); IOWA CODE § 356.7(1); MICH. COMP LAWS § 800.404(8) (2003). Other state statutes allow for deductions from an inmate's wages in order to recover a portion of the costs of incarceration. *See, e.g.*, ARK. CODE § 12–30–406 (2003); MINN. STAT. § 243.23(3); CAL. CODE REGS. tit. 15, § 3483(d)(3) (2003) (allowing recovery of *20%* of all earned prisoner wages to cover costs of incarceration) (emphasis added); MO STAT. § 217.435(2); NEB. REV. STAT. § 83–184(b)(3) (2003).

**8.** Although Waters did not affix to his complaint a copy of the VBCJ fee program, a complaint includes any document which is incorporated into it by reference. *See Robinson v. Ladd Furniture, Inc.*, No. 92–2286, 1993 WL 211309, at *3, 1993 U.S.App. LEXIS 14252, at *8–9 (4th Cir.1993) (considering independent sales agreement that was incorporated by reference) (unpublished) (internal citation omitted). In response to the Court's

provides that the cost of a prisoner's keep, not to exceed $1.00 per day, shall be deducted from the inmate accounts of all non-federal prisoners. The General Order further provides that all monies sent to, or received by, an inmate must first be applied to the amount owed for room and board. Any remaining balance will be applied to the inmate's Canteen account. If, upon release, an inmate has a negative room and board balance, he will be required to sign a financial responsibility statement. This statement serves as the first of three bills issued for a negative balance. If the inmate does not pay the negative balance, the Sheriff's Office will prepare a report for collection of the inmate's unpaid fees as part of the Set Off Debt Collection program. Payments received directly from the inmate, or through the Set Off Debt Collection process will be posted to the inmate's account. If an inmate with funds is subsequently incarcerated, those funds will be applied to any monies owed on the account first. Any balance will then be credited to the inmate's Canteen account.

■ Although Waters claims the one dollar per day fee amounts to a constitutional violation, he fails to specify any constitutional provision involved. Charitably construed,[9] Waters' complaint may be read to claim that Virginia's one dollar per day room and board fee (A) constitutes (i) cruel and unusual punishment, or is (ii) an excessive fine under the Eighth Amendment; (B) violates (i) due process, or (ii) equal protection under the Fourteenth Amendment; or (C) is not reasonably related to a legitimate penological interest. These possible claims, separately addressed here, are all meritless.

## A. Eighth Amendment

### (i) Cruel and Unusual Punishment

■ The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.[10] More specifically, this provision operates both to prohibit excessive sentences and to protect prisoners "from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996). To establish an Eighth Amendment claim for the imposition of cruel and unusual punishment, "a prisoner must prove two elements—that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993)) (internal quotations omitted). Waters' complaint, read generously, alleges no facts that might conceivably establish these elements. Simply put, the requirement that Waters pay a very small portion of his keep in prison does not deprive him of any basic human need, nor does VBCJ's minimal fee reflect any constitutionally culpable state of mind on the part of VBCJ officials.

Although the Fourth Circuit has not squarely addressed the constitutionality of Virginia's new room and board fee, other courts have considered the issue and "have consistently found no constitutional impediment to deducting the cost of room and

---

Order dated January 20, 2004, the Office of the Attorney General for the Commonwealth of Virginia provided official documentation of the VBCJ's fee program.

**9.** *Pro se* complaints involving civil rights issues should be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert.*

*denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).

**10.** The Eighth Amendment provides that
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.
U.S. Const. amend. VIII.

board from a prisoner's wages." *Tillman v. Lebanon,* 221 F.3d 410, 416 n. 3 (3rd Cir.2000).[11] Indeed, "nothing in the Eighth Amendment ... requires a state to provide an inmate, free of charge, with a necessary commodity that would not be free outside the prison walls and which the inmate has the legal means to obtain." *Martin v. Debruyn,* 880 F.Supp. 610, 614 (N.D.Ind.1995), *aff'd,* 116 F.3d 1482 (7th Cir.1997).

Consistent with this principle, it is settled that prisoners may be required to pay other expenses associated with their care, such as the cost of medical services. Thus, the Supreme Court has noted that although the Eighth Amendment's prohibition against cruel and unusual punishment requires the provision of medical care for persons in custody, the Constitution does not dictate the allocation of such costs. *See Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 245, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (stating that "nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him."). This precept has been relied on by some courts to allow correctional facilities to charge prisoners for medical co-payments and other costs associated with medical services without running afoul of the Constitution.[12]

Again, Waters does not allege that paying the one dollar per day room and board fee extends his prison sentence, deprives him of any basic human need, or otherwise renders him without necessities such as food and shelter. Instead, Waters complains in the abstract that he needs his Canteen money for items such as stamps and toiletries. He does not, however, identify how the VBCJ fee program deprives him of his basic human needs. *See Tillman,* 221 F.3d at 419 (citation omitted). Accordingly, Waters' attack on the one dollar per day room and board fee does not implicate or establish the basic elements of an Eighth Amendment cruel and unusual punishment claim.

(ii) Excessive Fine

■ Assuming, *arguendo,* that Waters' complaint includes a claim that the VBCJ's room and board fee is an unconstitutional fine, this claim also fails. By its plain language, the Excessive Fines Clause of the Eighth Amendment is only violated when a fee is both a "fine" and "excessive." *Id.* at 420 (citing *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)). In this context, the term "fine" refers to punishment for a criminal offense. *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (holding that Excessive Fines clause does not apply to civil-jury award of punitive fines); *see also Thomas v. Commissioner,* 62 F.3d 97, 102 (4th Cir.1995) (affirming imposition of additional deficiency tax as non-punitive in nature and not violative of the Eighth Amendment).

11. *See also Christiansen v. Clarke,* 147 F.3d 655, 657 (8th Cir.1998) (affirming *sua sponte* dismissal of complaint alleging that the correctional facility deducted $2,790.00 from an inmate's account to cover costs of incarceration); *Mastrian v. Schoen,* 725 F.2d 1164, 1166 (8th Cir.1984); *Iowa v. Love,* 589 N.W.2d 49, 52 (Iowa 1998); *Cumbey v. Oklahoma,* 699 P.2d 1094, 1094 (Okla.1985).

12. *See, e.g., Reynolds v. Wagner,* 128 F.3d 166, 174 (3d Cir.1997) (holding that prisoner co-payment plan was not violative of the Eighth Amendment); *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 408 (9th Cir. 1985) (concluding that prisoner had alleged no facts sufficient to support allegation that $3.00 fee for medical visits constituted deliberate indifference); *Johnson v. Dep't of Pub. Safety & Correctional Servs.,* 885 F.Supp. 817, 820 (D.Md.1995) (holding that co-payment requirements for prison medical services is constitutionally permissible).

VBCJ's room and board fee does not fit this definition; it is not punishment for any criminal offense; the fee may be assessed against all state prisoners incarcerated at the VBCJ, regardless of the nature of their crimes or the length of their sentences. VA. CODE § 53.1–131.3 (2003). Simply put, VBCJ's room and board fee is precisely that—a fee to cover (to a small extent) a cost, not a fine to punish.

Additionally, this quite modest fee cannot reasonably be termed "excessive" in any realistic or constitutional sense. The Third Circuit put this point well in noting that room and board fees "can hardly be called fines when they merely represent partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." *Tillman*, 221 F.3d at 420. Certainly one dollar per day is considerably less than anyone would spend for daily living outside of prison. Also worth noting is that VBCJ's room and board fee is low in comparison to similar fees assessed elsewhere.[13] Thus, the VBCJ fee program is neither a "fine" nor "excessive" in any reasonable sense.

The finding that Virginia's room and board fee does not constitute an excessive fine is further supported by the fact that prisoners frequently are assessed with fines designed to cover a portion of the costs of incarceration. As stated above, the United States Sentencing Guidelines require courts to consider the costs of imprisonment and/or supervised release in calculating fines for individual criminal defendants.[14] Thus the Fourth Circuit has upheld the imposition of an $80,200 fine to cover costs of incarceration for a federal defendant. *See United States v. Gresham*, 964 F.2d 1426, 1430 n. 6 (4th Cir.1992) (recognizing that 18 U.S.C. § 3752(a) lists several factors to be considered by courts in determining whether and in what amount to impose a fine, including the expected costs to the government of any term of imprisonment, probation or supervised release). Therefore, fees and fines to cover costs of incarceration are part and parcel of what a criminal defendant may expect to pay upon conviction and imprisonment.

Accordingly, VBCJ's minimal room and board fee, authorized by the Virginia statute, does not violate the Excessive Fines Clause of the Eighth Amendment.

### B. Fourteenth Amendment

#### (i) Equal Protection

■ Waters' complaint, charitably construed, alleges that VBCJ's room and board fee is in violation of the Equal Protection Clause because it is not assessed against federal inmates held in VBCJ.

■ The Equal Protection Clause of the Fourteenth Amendment protects

---

**13.** Typically, "[p]er diem fees range from a token—e.g., $2 per day in Palm Beach Co., Florida—to the substantial—e.g., $60 per day in Oakland Co., Michigan." *Fees Paid by Jail Inmates, supra* n. 6.

**14.** The Guidelines formerly required courts to impose a fine for costs of incarceration in addition to any punitive fine imposed. A circuit conflict developed regarding whether a court may impose a fine for costs of imprisonment and/or supervised release absent the concurrent imposition of a punitive fine. *Compare United States v. Labat*, 915 F.2d 603 (10th Cir.1990) (requiring imposition of a punitive fine before allowing a costs of imprisonment fine) *with United States v. Sellers*, 42 F.3d 116 (2d Cir.1994) (not requiring imposition of a punitive fine before allowing a costs of imprisonment fine). While this conflict has not been definitively resolved, in 1997, the Sentencing Commission amended the Guidelines to require consideration of the expected costs of imprisonment and/or supervised release as one of several factors in calculating fines for individual defendants. U.S. Sentencing Commission, *Guidelines Manual*, App. C, amend. 572.

against arbitrary classifications by state actors. *See* U.S. Const. amend. XIV § 1. Such classifications, however, need only be rationally related to a legitimate state interest "[u]nless a classification trammels fundamental personal rights or is drawn upon inherent suspect distinctions such as race, religion, or alienage ...." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Although the Equal Protection Clause protects prisoners from discriminatory treatment by prison officials, prisoners are not a suspect class. *See Roller v. Gunn,* 107 F.3d 227, 233 (4th Cir.1997); *Pryor v. Brennan,* 914 F.2d 921, 923 (7th Cir.1990); *Moss v. Clark,* 886 F.2d 686, 690 (4th Cir.1989). Thus, prison regulations need only survive a reasonableness inquiry, not strict scrutiny.[15] This is so because the "constitutional rights of prisoners—limited by the fact of incarceration itself and by valid penological objectives—must be balanced against the recognition" that prison authorities are "best equipped to make difficult decisions regarding prison administration." *Blagman,* 112 F.Supp.2d at 539 n. 6 (internal citation omitted). In other words, as the Fourth Circuit has stated, "the reason for this less rigorous" reasonably related standard of review "is that, particularly in a federal court's review of a state penal system, the inordinately difficult undertaking of prison administration and concerns about separation of power 'counsel a policy of judicial restraint.'" *Lane v. Griffin,* 834 F.2d 403, 406 (4th Cir.1987) (citing *Turner,* 482 U.S. at 85, 107 S.Ct. 2254).

■ Accordingly, in an equal protection inquiry, a plaintiff must make a threshold showing (i) that he has been treated differently from others with whom he is similarly situated and (ii) that the unequal treatment was a result of purposeful discrimination. *See Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir.2002) (internal citations omitted); *see also Shaheed v. Winston,* 885 F.Supp. 861, 869 (E.D.Va. 1995), *aff'd,* 161 F.3d 3 (4th Cir.1998) (unpublished).

Waters' complaint shows neither, nor are there facts that suggest otherwise. First, Waters fails to show that he has been treated differently from other state VBCJ inmates because he concedes in his pleading that all state inmates housed at VBCJ must pay the one dollar per day fee. Second, while it is true that federal inmates are not assessed the room and board fee, they are not similarly situated to state inmates. Waters explicitly acknowledges in his pleading that there is a salient difference between federal and state inmates inasmuch as the federal government reimburses VBCJ for the costs of housing federal inmates. Therefore, Waters has failed to allege any facts that would support the basic elements of an equal protection claim.

(ii) Due Process

Broadly construed, Waters alleges that VBCJ's deduction of one dollar per day from his Canteen account to cover the room and board fee deprives him of a property interest without adequate procedural due process.

■ The Due Process Clause of the Fourteenth Amendment prohibits the States from depriving any person of property without "'due process of law.'" *Dusenbery v. United States,* 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)

---

15. *See Blagman v. White,* 112 F.Supp.2d 534, 538, n. 6 (E.D.Va.2000) (citing *Washington v. Harper,* 494 U.S. 210, 223, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (reasonableness standard applies whenever the needs of prison administration implicate constitutional rights); *Turner v. Safley,* 482 U.S. 78, 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (laying out a four factor test for determining reasonableness in the prison context)).

(citation omitted). Under procedural due process, the plaintiff's interest must fall within the scope of "life, liberty, or property." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Waters' claim squarely falls within the scope of procedural due process because inmates possess a property interest in the funds in their prison accounts. *See, e.g., Johnson*, 885 F.Supp. at 821. Thus, it is necessary to consider whether the VBCJ afforded constitutionally adequate procedural due process when deducting monies from his Canteen account.

This consideration begins with the premise that due process, " 'is flexible and calls for such procedural protections as the particular situation demands' " in order to minimize the "risk of error." *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 12–13, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). In some instances, the taking of property by a state requires post-deprivation notice and a hearing. *See Tillman*, 221 F.3d at 421 (citing *Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). But where the state must take quick action or where it is impractical to provide meaningful post-deprivation process, due process will be satisfied by the availability of some meaningful post-deprivation means to assess the propriety of the state's action. *Parratt*, 451 U.S. at 539, 101 S.Ct. 1908. *Parratt*, however, only applies to situations where it is truly impossible for the state to provide pre-deprivation process before a person is unpredictably deprived of liberty or property by a state actor's unauthorized conduct. *See Lawrence v. Swanson Inmate Commissary Servcs.*, 151 F.3d 1029 (4th Cir.1998) (unpublished) (remanding prisoner complaint regarding deduction of

money from his Canteen account where district court did not examine the policy allowing the deduction).

▮ The Third Circuit has considered the requisite level of procedural due process necessary for the collection of prisoner room and board fees and concluded that it is impractical to expect prisons to provide post-deprivation proceedings in this situation. *Tillman*, 221 F.3d at 422. The Third Circuit aptly noted that requiring post-deprivation proceedings "for what are essentially ministerial matters" would greatly increase the "transaction costs" of room and board fees and hinder the correctional facility's ability to reduce the costs of incarceration. *Id.* In conformance with the Third Circuit's view, a requirement that VBCJ provide post-deprivation hearings for the collection of its room and board fee would impair the facility's ability to reduce the costs of incarceration, thus undermining the program. Accordingly, VBCJ's collection of the one dollar room and board fee does not require that VBCJ provide Waters with a post-deprivation hearing.

Additionally, an examination of the VBCJ's General Order reveals that the one dollar per day fee assessment involves routine matters of accounting and carries little risk of error. The General Order also details the consequences of non-payment and informs inmates that if they are subsequently incarcerated with funds, then those funds will be applied to any negative balance before being credited to their Canteen accounts. In sum, neither Waters' complaint nor any facts relating to VBCJ's General Order support an argument that Waters received less procedural due process than what is constitutionally required in the circumstances.[16] Therefore, VBCJ's fee program does not violate Waters' right to procedural due process.

16. *See also, Woodley v. Department of Corrections*, 74 F.Supp.2d 623, 627 (E.D.Va.1999)

# 812

## C. Legitimate Penological Interest

Finally, Waters' complaint, broadly construed, alleges that Virginia's one dollar per day room and board fee is not reasonably related to any legitimate penological interest. This claim also plainly fails, as there are several conceivable rationales to support the finding that VBCJ's fee program is " 'reasonably related' to promoting a legitimate penological interest." *Sample v. Angelone,* 173 F.3d 425 (Table), 1999 WL 52347, *1 (4th Cir. Feb.5, 1999) (unpublished) (citing *Turner,* 482 U.S. at 87, 107 S.Ct. 2254). For example, the room and board fee may help defray taxpayer liability for the considerable expense of incarcerating criminal offenders. Additionally, the room and board fee may engender fiscal responsibility in VBCJ's inmates. And finally, the room and board fee may contribute to the overall well-being of the local inmate population as the collected fees are used for general jail purposes. VA. CODE § 53.1–131.3 (2003). Therefore, even assuming *arguendo* that the VBCJ room and board fee is of constitutional significance, the fee is reasonably related to the promotion of legitimate penological interests.

### III. Conclusion

Therefore, for the reasons stated above, Waters' claims must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and Fed. R.Civ.P. 12(b)(6). An appropriate Order shall issue.

(holding that no due process or other constitutional violation occurred when a Virginia parolee was required to pay for room, board, and other costs incurred while serving out his sentence at a halfway house, and noting that what little law there is on the subject supports the "proposition that a state may require a prisoner to pay the costs of supervision as a condition of parole," and that "there is no Supreme Court case holding or even hinting to the contrary.").