**Michael Joseph CAMPBELL, Plaintiff,**

**v.**

**Gene JOHNSON, Dir., Virginia, Dep't of Corr., et al., Defendants.**

**No. 1:06 CV 393 TSE/BRP.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 11, 2006.

Michael Joseph Campbell, Waverly, VA, Pro se.

### MEMORANDUM OPINION AND ORDER

ELLIS, District Judge.

Michael Campbell, a Virginia inmate proceeding *pro se*, filed a civil rights action, pursuant to 42 U.S.C. § 1983. Plaintiff is incarcerated at Sussex I State Prison, where he alleges that the following individuals violated his constitutional rights: Gene Johnson, Director of the Virginia Department of Corrections; Helen Fehey, Chairwoman of the Virginia Parole Board; Lieutenant Harrison, Building Two Supervisor, Sussex I; Lieutenant Bronson, Building Two Supervisor, Sussex I; Counselor Williams, Chief Counselor, Sussex I; and Dr. Emran, Medical Doctor, Sussex I. Plaintiff asserts a panoply of claims against these defendants, which liberally construed, may be categorized as follows:

1. Defendant Johnson violated plaintiff's Eighth and Fourteenth Amendment rights by housing him, a parole-eligible inmate, with parole-ineligible inmates;

2. Defendant Fehey violated plaintiff's Fourteenth Amendment right to due process by determining that he should not be released on parole;

3. Defendant Johnson violated plaintiff's fundamental constitutional right of access to the courts by denying him access to legal research materials;

4. Defendant Emran violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by denying him medical treatment; and

5. Defendants Harrison, Bronson, and Williams violated plaintiff's Fourteenth Amendment right to equal protection by racially discriminating against plaintiff in employment selection and promotion.

For the reasons that follow, claims 1 through 4 must be dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim,[1] and plaintiff will be directed to provide additional information regarding claim 5.

---

1. Section 1915A provides:

   (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a inmate seeks redress from a governmental entity or officer or employee of a governmental entity.

   (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
   (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
   (2) seeks monetary relief from a defendant who is immune from such relief.

## I. Standard of Review

Pursuant to § 1915A, a court must dismiss an inmate complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker*, 9 F.Supp.2d 641, 642 (E.D.Va.1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## II. Merits

### A. Claim 1: Housing

#### 1. Fourteenth Amendment: Due Process

■ In claim 1, plaintiff argues that housing parole-eligible inmates with parole-ineligible inmates creates unconstitutional prison conditions because parole-ineligible inmates extort money from parole-eligible inmates. In essence, plaintiff alleges that, unless parole-eligible inmates agree to pay an extortion fee, parole-ineligible inmates threaten to involve them in fights or to report them for disciplinary infractions that violate the Virginia Department of Corrections Division Operating Procedure 861 ("DOP 861"), which delineates inmate disciplinary offenses, punishments, and proceedings. Thus, plaintiff argues that housing him with parole-ineligible inmates places him in an environment where he is subjected to extortion, thereby violating his Fourteenth Amendment right

not to be deprived of a liberty interest without due process.[2]

Analysis properly begins with recognition of the well-settled principle that inmates do not have a constitutionally-protected liberty interest in being housed at any particular institution. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (holding that a valid conviction "empower[s] the State to confine [an inmate] in any of its prisons"); *Waters v. Bass*, 304 F.Supp.2d 802, 805 (E.D.Va.2004) (finding that due process rights are not invoked by routine housing assignments in the Virginia Department of Corrections). Corollary principles are that (1) Virginia's prison housing assignment regulations do not create a liberty interest in a specific housing assignment and (2) prison officials have broad discretion to determine the facility where an inmate is housed. *Id.; see Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir.1991) (noting that prison officials should be granted broad discretion in managing prisons safely and effectively). Therefore, plaintiff's due process rights are not implicated by his routine housing assignment unless the conditions of his confinement diverge so substantially from expected prison conditions as to create an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Plaintiff's claim falls far short of meeting this stringent standard. Simply put, housing inmates with differing post-incarceration prospects in the same facility does not expose inmates to atypical and significant hardships. Plaintiff's claim that mixing these groups of inmates increases the risk for extortion does not create a claim

---

**2.** Plaintiff also argues that the housing conditions violate his First Amendment, Ninth Amendment, and equal protection rights. Because he has not adduced any facts nor presented any arguments in support of these claims, they need not be addressed.

of constitutional stature; it does not demonstrate that his housing conditions subject him to anything beyond the ordinary incidents of prison life. Indeed, any large group of inmates—even groups comprised solely of parole-eligible inmates—likely includes persons who, for a variety of reasons wholly unrelated to their parole eligibility, will threaten other inmates or extort money from them.[3] Simply put, fights, altercations, threats, and extortion between and among inmates, are not extraordinary or atypical incidents of prison life. When they occur, they should be promptly and appropriately addressed and remedied through the prison's grievance and disciplinary processes. Thus, plaintiff's due process claim fails as a matter of law because housing him with parole-ineligible inmates is not a condition of confinement that creates an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293.

Although no published opinion squarely addresses the legal implications of housing parole-eligible inmates and parole-ineligible inmates together, a decision on analogous facts by a district court in this circuit supports the result reached here. In *Smith v. Lamanna*, a district court dismissed an inmate's complaint, holding that the inmate did not have a right to be transferred away from a facility where he was more likely to fight with other inmates. No. 0:05–2260, 2006 WL 1705664, 2006 U.S. Dist. LEXIS 44536 (D.S.C. June 13, 2006). There, as here, the plaintiff had no constitutionally protected liberty interest in a particular housing assignment.[4]

In sum, plaintiff's claim falls far short of alleging or demonstrating that housing him in the general prison population has subjected him to conditions outside the ordinary incidents of prison life. Accordingly, plaintiff fails to state a due process claim.

3. To be sure, there may be circumstances, not present here, where housing a particularly aggressive and assaultive inmate with a vulnerable inmate may result in a constitutional tort if prison officials are deliberately indifferent to the risk of assault in the circumstances. *See, e.g., Wilson v. Wright*, 998 F.Supp. 650 (E.D.Va.1998) (holding that a triable issue of fact existed as to the issue of deliberate indifference where a prison official housed a small, young white prisoner with a much larger, African–American prisoner, known to be a violent sex offender and the larger prisoner ultimately assaulted and forcibly sodomized the smaller prisoner).

4. Nor does the Supreme Court's recent decision in *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), compel a different result. There, the Supreme Court held that inmates have a protected liberty interest in avoiding assignment to a Supermax facility because such assignment imposes an atypical and significant hardship. In particular, in Supermax facilities inmates are prohibited from almost all human contact; the light is on for 24 hours; and inmates are only permitted one hour of indoor exercise. While the Supreme Court acknowledged that many of these conditions exist in solitary confinement, two additional circumstances compelled the conclusion that the conditions imposed an atypical and significant hardship: (i) placement was indefinite and (ii) placement disqualifies an otherwise eligible inmate for parole consideration. Significantly, the Supreme Court noted that, standing alone, any of these conditions might not be sufficient to create a liberty interest. Thus, only when taken together did the Supreme Court find a liberty interest in avoiding placement at a Supermax facility. In contrast to *Wilkinson*, plaintiff has simply alleged that housing inmates with differing post-incarceration prospects exposes him to the possibility of extortion. As explained herein, fights, altercations, or threats, or the risk of extortion, are ordinary incidents of prison life, whether or not inmates with differing post-incarceration prospects are housed together or separately. Thus, plaintiff has not alleged an atypical or significant hardship sufficient to give rise to a liberty interest.

### 2. Eighth Amendment

■■■ Plaintiff further alleges that his housing assignment violates the Eighth Amendment because having to pay fellow inmates extortion fees to protect his potential early release on parole amounts to cruel and unusual punishment. To establish a claim of cruel and unusual punishment, plaintiff must allege and prove (i) an objectively serious deprivation of a basic human need, one causing serious physical or emotional injury and (ii) that prison officials acted with deliberate indifference to plaintiff's needs. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir.1995). Plaintiff's claim fails under the first prong because an inability to obtain early release or parole is not a serious physical or emotional injury. *See, e.g., Strickler v. Waters,* 989 F.2d 1375, 1380–81 (4th Cir.1993) (granting summary judgment where plaintiff produced no evidence of a serious or significant physical or emotional injury resulting from the complained of conditions, that is, double bunking, limited exercise opportunities, and inadequate ventilation). Yet, even assuming plaintiff established the requisite serious physical or emotional injury, this claim would nonetheless fail under the second prong because a prison official cannot be found liable for the acts of inmates "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. In other words, plaintiff must allege and prove that defendants acted with deliberate indifference toward plaintiff's serious physical or emotional injury. Thus, because plaintiff has not alleged that prison officials were aware of, and deliberately indifferent to, the alleged extortion, claim 1 fails to state an Eighth Amendment claim and must be dismissed.

### B. Claim 2: Denial of Parole and Loss of Good Time Credits

In claim 2, plaintiff argues that he was twice denied parole and good time credits solely because parole-ineligible inmates accused him of inmate infractions after plaintiff refused to pay extortion money to them. Specifically, plaintiff argues that his sentence was improperly increased by the Parole Board when it failed to consider his "Parole Plans" and denied him parole based on his disciplinary infractions.

■■■ Where, as here, plaintiff attacks the fact and duration of his continued confinement, the appropriate remedy is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, not a claim under 42 U.S.C. § 1983.[5] *See Preiser v. Rodriguez,* 411 U.S. 475, 487, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *see also Wilkinson v. Dotson,* 544 U.S. 74, 78–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (summarizing the distinctions between § 1983 and habeas

---

5. A habeas corpus petition based on plaintiff's parole denials would likely fail. Although Virginia inmates have some protected liberty interests in parole eligibility considerations, *Hill v. Jackson,* 64 F.3d 163, 170 (4th Cir. 1995), parole boards are entitled to considerable discretion and inmates are "entitled to no more than minimal procedure." *Vann v. Angelone,* 73 F.3d 519, 522 (4th Cir.1996). Due process is satisfied when parole authorities send the inmate a letter explaining why the inmate is precluded from parole or parole eligibility. *Id.* at 523. This standard is met here as plaintiff concedes that the Parole Board considered his case and informed him that he was being denied parole because of the "serious nature and circumstances of [his] offense" and because of "major institutional infractions." The Parole Board concluded that plaintiff was "not ready to conform to society." Thus, the current record discloses no denial of due process.

actions). As the Supreme Court has noted, a § 1983 damages claim for unconstitutional imprisonment is not appropriate unless and until plaintiff's conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *see also Edwards v. Balisok,* 520 U.S. 641, 646–47, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (recognizing a valid § 1983 claim when the procedural claim at issue does not call into question the lawfulness of plaintiff's continuing confinement). In the instant case, should plaintiff receive his desired relief, an earlier release on parole, it would immediately call into question his continued confinement. Thus, plaintiff's claim must be brought pursuant to 28 U.S.C. § 2254. Accordingly, plaintiff fails to state a cognizable claim under 42 U.S.C. § 1983 and claim 2 must be dismissed.

### C.  Claim 3: Denial of Access to Legal Research Material

■ Plaintiff alleges in claim 3 that defendants denied him meaningful access to the courts because (i) the law library at his institution is inadequate, (ii) the institutional attorney declined to assist him, and (iii) he cannot obtain research materials from sources outside his institution.

■ The principles governing this claim are well-settled. Inmates have a right to meaningful access to the courts, which "can be satisfied either by providing inmates with adequate law libraries or with adequate assistance from persons trained in the law." *Hause v. Vaught,* 993 F.2d 1079, 1084 (4th Cir.1993) (citing *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). To

state a claim for denial of access to the courts, plaintiff must establish that the law library or legal assistance was inadequate and that plaintiff suffered an "actual injury or specific harm." *Id.* at 1084–85; *see. e.g., Strickler,* 989 F.2d at 1382; *Magee v. Waters,* 810 F.2d 451, 452–53 (4th Cir. 1987). Actual injury requires the inmate "demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded." *Jackson v. Wiley,* 352 F.Supp.2d 666, 679–80 (E.D.Va. 2004). Plaintiff's claim fails, even assuming the law library or legal assistance was inadequate, because he has not alleged that he sustained an actual injury. Specifically, he does not claim that he was prevented from meeting deadlines or otherwise prejudiced in any pending litigation. Indeed, the contrary is apparent as plaintiff has filed an abundance of pleadings and other materials in this matter. Thus, claim 3 must be dismissed for failure to state a claim.

### D.  Claim 4: Denial of Medical Care

■ Plaintiff alleges he was subject to cruel and unusual punishment in violation of the Eighth Amendment because defendant Dr. Emran, a prison physician, failed to provide proper treatment for his hair fungus condition. As alleged, this claim falls far short of stating a constitutional deprivation.

■ To state a claim of inadequate medical care that rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Staples v. Va. Dep't of Corr.,* 904 F.Supp. 487, 492 (E.D.Va.1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a

sufficiently serious medical need. Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference ... by either actual intent or reckless disregard." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990); *see Estelle,* 429 U.S. at 106, 97 S.Ct. 285. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (citations omitted).

In this case, plaintiff admits that Dr. Emran examined plaintiff on numerous occasions and treated plaintiff's hair fungus with specialized shampoo and medically controlled barber clippers. Although plaintiff may disagree with this treatment, plaintiff's allegations reflect, at most, medical negligence; they clearly do not suffice to establish deliberate indifference by Dr. Emran. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir.1985) (noting that a inmate's disagreement over the course of his treatment does not state a cause of action). Accordingly, claim 4 must be dismissed as plaintiff fails to state a claim for denial of medical care in violation of the Eighth Amendment.

### E. Claim 5: Racial Discrimination

In claim 5, plaintiff alleges that defendants discriminated against him in job selection and promotion because of his race. To state a cause of action under § 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Thus, each named defendant must

have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against them. Moreover, to assert an equal protection claim, which plaintiff apparently is asserting, he must plead sufficient facts to make a threshold showing that he has been treated differently from similarly situated individuals and that the discrimination was intentional.

As presented, plaintiff has not stated an equal protection claim against any of the named defendants. Specifically, plaintiff has not pled sufficient facts to indicate that he was treated differently than similarly situated individuals or that the discrimination was intentional. Because plaintiff is proceeding *pro se* and his complaint must be liberally construed, he will be granted an opportunity to particularize and amend his complaint to state a cause of action. *Bracey v. Buchanan,* 55 F.Supp.2d 416, 421 (E.D.Va.1999) (explaining that *pro se* complaints are liberally construed, but dismissing *pro se* complaint after plaintiff failed to particularize her claim despite receiving an opportunity to do so).

Quite apart from the pleading deficiencies, it does not appear that plaintiff has exhausted his institution's administrative remedies with respect to his claim of racial discrimination in job selection and promotion. It is well-settled that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* — U.S. —, —, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006) (requiring complete exhaustion of correctional facility administrative remedies). Thus, plaintiff, as a Virginia inmate, is required to exhaust

the claims raised in the instant complaint in accordance with VDOC grievance procedures. In particular, he must comply with VDOC Department Operating Procedure 866 ("DOP 866"), which provides multiple levels of administrative remedies in the form of inmate grievances. Per DOP 866–7.13, an inmate must first attempt to resolve any issues informally. Prison officials must respond to the inmate's complaint within fifteen days of receiving an informal complaint. *See* DOP 866–7.13. After seeking informal resolution, an inmate may file a regular grievance to the warden or superintendent. The grievance must be filed within thirty days of the underlying incident or occurrence. *See* DOP 866–7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available following the filing of a regular grievance. *See* DOP 866–7.15. Before this action may proceed, plaintiff will be required to submit additional information concerning his exhaustion of administrative remedies. *See Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 680 (4th Cir.2005) (deeming *sua sponte* dismissal of a claim on exhaustion grounds improper because the absence of failure-to-exhaust as grounds for dismissal in § 1997e(c)(1) was an intentional congressional omission).

### F. Appointment of Counsel

■ Finally, plaintiff has filed a Motion to Appoint Counsel. A court may request an attorney to represent an indigent plaintiff proceeding *in forma pauperis.* 28 U.S.C. § 1915(e)(1). The Fourth Circuit, however, has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately. *Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir.1984). It is unnecessary at this time to appoint counsel for plaintiff as no such "exceptional circumstances" exist in this case that would warrant appointment of counsel. To date, plaintiff has ably filed his pleadings and replied to the various orders, as well as demonstrated comprehension of the procedures and laws of this Court, the Fourth Circuit, and the United States Supreme Court. Thus, his Motion to Appoint Counsel must be denied.

Accordingly, it is hereby

ORDERED that the complaint be and is conditionally filed pending compliance with the requirements of this Order; and it is further

ORDERED that plaintiff's request to proceed *in forma pauperis* is conditionally granted to the extent that plaintiff need not prepay the filing fee at this time. If granted *in forma pauperis* status, plaintiff will be required to pay the filing fee in installments after first paying an initial filing fee; and it is further

ORDERED that the Clerk request plaintiff's institution to provide an Inmate Account Report Form on plaintiff within thirty (30) days of the date of this Order; and it is further

ORDERED that claims 1 through 4 are DISMISSED WITH PREJUDICE for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that, within thirty (30) days of the date of this Order, plaintiff particularize and amend his complaint ONLY regarding the alleged racial discrimination raised in claim 5 by (i) naming every person he wishes to include as a defendant; (ii) submitting a short, detailed statement of background facts which describes the *specific conduct of each defendant* whom he alleges violated his constitutional rights, including the facts giving rise to his complaint, the dates of each incident, the persons involved, the injuries received, the

606

reasons why he believes each defendant is liable to him, and the remedies sought; and (iii) submitting one original amended complaint and one copy of the amended complaint for each defendant he names. Plaintiff must include his civil action number on the first page of his amended complaint, and this amended complaint will serve as the sole complaint in this civil action; and it is further

ORDERED that, within thirty (30) days of the date of this Order, plaintiff must provide clear evidence of having exhausted his institution's administrative grievance system for his racial discrimination claim before filing this action. Plaintiff must provide this information either through official documentation from his institution or by sworn affidavit, made under penalty of perjury; and it is further

ORDERED that plaintiff's Motion for Court Appointed Counsel (Docket # 3) be and is DENIED; and is further

ORDERED that plaintiff's Petitions for Writ of Ad Testificandum (Docket # s 4, 5, 7, 8, 9, and 14) be and are DENIED as premature; and it is further

ORDERED that plaintiff's Motion for a Protective Order be and is DENIED as moot; and it is further

ORDERED that plaintiff's failure to comply with any part of this Order within THIRTY (30) DAYS FROM THE DATE OF THIS ORDER, or failure to notify this Court immediately in the event he is transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Fed.R.Civ.P. 41(b).

The Clerk is directed to send of copy of this Order to plaintiff, a copy of this Order, the Inmate Account Report Form, and accompanying letter to plaintiff's current institution of confinement, and a courtesy copy of this Order and the complaint to the Attorney General of Virginia.