**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANTHONY LEON VANN,
Petitioner-Appellant,

v.

No. 95-6471

RONALD ANGELONE, Director,
Virginia Department of Corrections,
Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-94-852-R)

Argued: November 1, 1995

Decided: January 9, 1996

Before WILKINSON, LUTTIG, and WILLIAMS,
Circuit Judges.

_____

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Luttig and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Gerald Thomas Zerkin, GERALD T. ZERKIN & ASSO-
CIATES, Richmond, Virginia, for Appellant. Mary Elizabeth Shea,
Assistant Attorney General, OFFICE OF THE ATTORNEY GEN-
ERAL, Criminal Law Division, Richmond, Virginia, for Appellee.
**ON BRIEF:** Melanie A. Hopper, GERALD T. ZERKIN & ASSO-

CIATES, Richmond, Virginia, for Appellant. James S. Gilmore, III, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Criminal Law Division, Richmond, Virginia, for Appellee.

_____

## OPINION

WILKINSON, Circuit Judge:

Anthony Leon Vann petitions for habeas corpus relief on the ground that the Virginia Department of Corrections ("DOC") denied him due process by arbitrarily finding him ineligible for parole under Virginia Code, § 53.1-151(B1). This section of the Virginia Code prohibits parole eligibility for individuals convicted of three separate offenses of murder, rape, or armed robbery, when such offenses are not "part of a common act, transaction or scheme." While Vann contends that two of his robberies were "part of a common act, transaction or scheme," the DOC found otherwise. We hold that the DOC decision fully satisfied the requirements of the due process clause. In so holding, we affirm the judgment of the district court.

I.

On February 28, 1974, Anthony Leon Vann and an accomplice robbed Victor Vogel at gunpoint of $100, two holsters, and clothing while Vogel was at work in his Portsmouth, Virginia store. Approximately thirty minutes later, Vann and two companions entered a railyard, where they robbed railroad detective Horace Wishart of his revolver at gunpoint. In July of 1974, Vann pled guilty to two counts of robbery and was sentenced to ten years on the first count and five years on the second.

Vann was paroled on October 28, 1977, only to be reincarcerated for a parole violation on September 14, 1979. He was again paroled on November 9, 1981. In 1983, he was charged with robbery, abduction, and the use of a firearm in the commission of a felony. On July 1, 1983, Vann pled guilty to these charges. He received consecutive sentences of fifty years for the robbery, ten years for the abduction, and two years for the weapons charge.

Less than ten years into his sixty-two-year sentence, on February 22, 1993, Vann was tentatively approved for parole, provided that he was legally eligible. Pursuant to a sentence audit performed on all DOC prisoners before their release, it was discovered that Vann was ineligible for parole because he had committed three armed robberies --the two in 1974 and the one in 1983. The Virginia Code prohibits inmates from receiving parole if they have committed three such offenses, provided that the offenses are not "part of a common act, transaction or scheme." Va. Code § 53.1-151(B1).

The DOC found that the two robberies Vann committed on the same evening in 1974 were not part of "a common act, transaction or scheme." The Virginia Parole Board then informed Vann of his ineligibility for parole by letter of August 25, 1993, citing Vann's "additional sentence(s)" as the reason for his ineligibility. Vann objected to the DOC's finding under § 53.1-151(B1), contending that the DOC's decision was "standardless, arbitrary and contrary to law." Accordingly, Vann advanced habeas corpus claims, first to the Portsmouth Circuit Court, which found his claims to be meritless, then to the Virginia Supreme Court, which denied his appeal, and finally to the federal district court, which also denied relief. Vann now appeals the decision of the district court.

II.

Vann appears before us with a heavy burden. It is difficult to imagine a context more deserving of federal deference than state parole decisions. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). This is because "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." Id., quoting Meachum v. Fano, 427 U.S. 215, 224 (1976). The absence of a constitutional right to parole means that a state has no duty to establish a system of parole, id., and if it chooses to do so, federal courts should allow a state's parole authorities "a wide range for experimentation and the exercise of discretion." Franklin v. Shields, 569 F.2d 784, 800 (4th Cir. 1978) (en banc), cert. denied, 435 U.S. 1003 (1978). "Moreover, to insure that the state-created parole system serves the public-interest purposes of rehabilitation and deterrence, the state may be

specific or general in defining the conditions for release and the factors that should be considered by the parole authority." Greenholtz, 442 U.S. at 7-8.

Most parole decisions involve a considerable degree of discretion. Hence, parole authorities must investigate and weigh "numerous factors including [the inmate's] history, mental and physical condition, attitude, and compatibility with the `interests of society.'" Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991) (en banc). The cumulative impact of this experience endows state authorities with the expertise to predict whether a given inmate will continue to prey on society if released. Parole decisions involve more than the exercise of state expertise, however. They are an integral part of the larger interest of states in administering their own system of corrections. Given such compelling reasons, it is no surprise that federal courts have generally refrained from meddling in state parole proceedings.

The above principles apply both to state decisions with respect to the actual release of an inmate on parole and to state decisions with respect to an inmate's initial eligibility for parole consideration. With no constitutional right to parole per se, federal courts recognize due process rights in an inmate only where the state has created "a legitimate claim of entitlement" to some aspect of parole. Id., quoting Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Such a liberty interest, however, is not created through the unilateral need, desire, hope, or expectation of a petitioner that the state will confer the benefit sought. Id. Because parole consideration and parole itself typically hinge on the discretionary decisions of parole authorities, inmates generally possess no entitlement, but only a desire, that a parole board will decide in their favor.

Even where this court has found that a parole statute establishes a liberty interest, we have held that inmates are entitled to no more than minimal procedure. At most, we have held that parole authorities must "furnish to the prisoner a statement of its reasons for denial of parole." Franklin, 569 F.2d at 784; see also Bloodgood v. Garraghty, 783 F.2d 470, 473 (4th Cir. 1986). In sum, whether or not a liberty interest exists, federal courts must defer to state agencies applying state laws and thus their oversight of state parole proceedings has been extremely limited.

4

III.

At issue here is the judgment of the Virginia DOC that, by virtue of his three armed robberies, Vann was ineligible for parole under § 53.1-151(B1) of the Virginia Code:

> Any person convicted of three separate felony offenses of (i) murder, (ii) rape or (iii) robbery by the presenting of firearms or other deadly weapon, or any combination of [these] offenses . . . when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole.

Va. Code § 53.1-151(B1). Appellant Vann objects to this decision on several grounds. He claims that he possesses a liberty interest in parole eligibility and that his due process rights were violated because: (1) parole eligibility determinations are arbitrary absent further constraint on the DOC's discretion to determine what is a "common act, transaction or scheme"; and (2) his two February 28, 1974 robberies were part of a "common act, transaction or scheme." In short, appellant invites us to construe the meaning of § 53.1-151(B1) of the Virginia Code as well as to judge the adequacy of the DOC's decision.

We reject petitioner's attempt to draw this court into the merits of either the state's parole statute or its individual parole decisions. To accept the invitation to review Vann's parole eligibility determination would require us to second guess both the Virginia DOC and the Virginia General Assembly. We would, for example, have to assess the facts and circumstances surrounding Vann's robberies, evaluate the DOC's reasons for denying Vann parole, compare the decision in Vann's case with others under § 53.1-151(B1), and develop federal decisional law on the definition of "common act, transaction or scheme," a provision in a Virginia statute. Such an exercise in state statutory refinement would compromise important principles of federalism, undermine state parole authorities, and install the federal judiciary as the final arbiter in yet one more area of state law. Whether to leave the decision of what constitutes a "common act, transaction or scheme" to the DOC's discretion, or to further refine § 53.1-151(B1) in a manner akin to what the federal government has

5

done in its Sentencing Guidelines, see, e.g. United States Sentencing Commission, Guidelines Manual, § 4A1.2, comment. (n.3), is entirely Virginia's prerogative. The Constitution simply does not speak to the generality or specificity of the standards for parole eligibility adopted by a state. See Greenholtz, 442 U.S. at 7-8.

The DOC is therefore not obliged to articulate detailed standards for parole eligibility under the statute, a process the DOC contends would deprive the statutory scheme of its essential flexibility. The application of this statute inescapably involves the exercise of official discretion. In fact, the statute itself permits the Parole Board "in its discretion" to review a "determination" by the DOC of parole ineligibility. Va. Code § 53.1-151(B1). These discretionary features make it doubtful that the statute confers upon petitioner any Fourteenth Amendment liberty interest. See Gaston, 946 F.2d at 344 ("a fear or hope about a future discretionary decision is too speculative to give him a liberty interest"). Assuming, arguendo, that a liberty interest does exist, the procedures mandated by the due process clause were satisfied. Here, Vann received the following letter from the Virginia Parole Board on August 25, 1993: "As a result of an additional sentence(s) and recomputation of your total sentence, however, you are not eligible for parole consideration at this time . . . ." This statement sufficed to communicate to Vann that it was his prior criminal activity that precluded his present eligibility for parole. See Bloodgood, 783 F.2d at 473; Franklin, 569 F.2d at 801.

The reasons for the parole determination in Vann's case are, of course, self-evident. Virginia denies parole eligibility to someone who has committed three or more armed robberies, rapes, and/or murders. The DOC concluded that Vann's two armed robberies on February 28, 1974--which victimized both a store owner and a railroad detective, were separated in time by approximately thirty minutes, occurred at a store and a railyard, and were perpetrated for distinct motives-- constituted separate felony offenses for the purposes of § 53.1-151(B1). Whether a federal court would have reached the same conclusion in the first instance is beside the point. The point is that Virginia reached that conclusion, and its decision must be sustained.

6

IV.

The judgment of the district court is affirmed.

<u>AFFIRMED</u>

7