**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MICHAEL ERIN SCOTT,
Petitioner-Appellee,

v.

No. 96-6458

RONALD J. ANGELONE, Director of
the Virginia Department of
Corrections,
Respondent-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CA-95-184)

Argued: October 30, 1996

Decided: November 21, 1996

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mary Elizabeth Shea, Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellant. Lauren Allan Parrott, Jr., KAUFMAN & CANOLES, P.C.,
Norfolk, Virginia, for Appellee. **ON BRIEF:** James S. Gilmore, III,
Attorney General of Virginia, Wirt P. Marks, IV, Assistant Attorney
General, OFFICE OF THE ATTORNEY GENERAL, Richmond,
Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Virginia Department of Corrections (VDOC) appeals the district court's grant of a writ of habeas corpus to Michael Scott. Because the district court erred in holding that the VDOC's application of a Virginia parole statute violated Scott's constitutional rights, we reverse.

The statute at issue here is Va. Stat. § 53.1-151(A) (Michie Supp. 1986). At the times relevant to this case that statute provided:

> Except as herein otherwise provided, every person convicted of a felony and sentenced and committed under the laws of this Commonwealth to the Department of Corrections or as provided for in § 19.2-308.1:
>
> 1. For the first time, shall be eligible for parole after serving one-fourth of the term of imprisonment imposed .. .
>
> 2. For the second time, shall be eligible for parole after serving one-third of the term of imprisonment imposed . . .
>
> 3. For the third time, shall be eligible for parole after serving one-half of the term of imprisonment imposed . ..
>
> 4. For the fourth or subsequent time, shall be eligible for parole after serving three-fourths of the term of imprisonment imposed . . . .
>
> Only prior commitments interrupted by a person's being at liberty, or resulting from the commission of a felony while in a state correctional facility, shall be included in determin-

2

> ing the number of times such person has been convicted,
> sentenced, and committed for the purposes of paragraphs 2,
> 3 and 4 of subsection A. "At liberty" as used herein shall
> include not only freedom without any legal restraints, but
> shall also include . . . release on probation or parole . . . .
> In any case in which a parolee commits an offense while on
> parole, only the sentence imposed for such offense and not
> the sentence or sentences or any part thereof from which he
> was paroled shall constitute the term of imprisonment.

Va. Stat. § 53.1-151(A) (Michie Supp. 1986). The Felon Term Indicator (FTI) for parole eligibility purposes under subsection (1) of this statute is termed FTI-1; under subsection (2) it is termed FTI-2, and so on.

In 1986, a Virginia court first convicted Michael Scott of a series of crimes, including robbery. On the robbery charge, the court sentenced Scott to 20 years imprisonment, with ten of those years suspended. It is the FTI treatment of this ten year suspended sentence that is at issue here.

In June 1988, Scott was released on parole from the 1986 sentence. A year later, a different Virginia state court convicted Scott of several other crimes, including grand larceny, for which he was sentenced to twenty years imprisonment. In June 1990, the first state court revoked its suspension of the ten years previously imposed in connection with the 1986 robbery conviction. The VDOC calculated Scott's eligibility for parole on this ten year sentence based on the FTI-2 standard.

VDOC asserts that use of the FTI-2 standard is correct because § 53.1-151(A) permits it to increase an inmate's FTI upon revocation of a sentence previously suspended. VDOC maintains that "[e]ach time the inmate has a felony, conviction, and commitment separated by a period of liberty, his felon term indicator increases." Scott claims that because the ten year originally suspended sentence stems from the 1986 conviction, his first, his eligibility for parole in connection with this sentence should be calculated pursuant to FTI-1.

Scott petitioned the Virginia Supreme Court for a writ of habeas corpus, asserting that VDOC's use of the FTI-2 standard in connec-

3

tion with the originally suspended 1986 sentence violated his constitutional rights. The Virginia Supreme Court denied the writ without discussion. Scott then filed a petition for a writ of habeas corpus in federal court. A magistrate judge recommended that the writ be granted, concluding that the VDOC had misinterpreted § 53.1-151(A) in applying FTI-2 status to Scott's 1986 sentence and so violated Scott's rights under the Due Process and Ex Post Facto clauses of the United States Constitution. The district court adopted the magistrate judge's recommendation and granted the writ. This appeal followed.

Although the district court's interpretation of the Virginia parole statute is reasonable, on this matter a federal court must defer to the Virginia courts, which have apparently adopted the VDOC's interpretation. Scott's counsel conceded at oral argument that the Virginia Supreme Court decided the merits of Scott's claim in its summary dismissal of his petition. We are bound by that decision. "Whether a federal court would have reached the same conclusion in the first instance is beside the point. The point is that Virginia reached that conclusion, and its decision must be sustained." Vann v. Angelone, 73 F.3d 519, 523 (4th Cir. 1996). See Gholston v. Boles, 305 F.2d 162, 163 (4th Cir. 1962) ("It is not for us to interpret West Virginia's statute, however. Her interpretation, implicit in the denial by her highest court of this prisoner's petition for habeas corpus, is binding upon us. If we found fault with that interpretation, as the prisoner contends we should, we would still be required to accept it.").

Scott contends that absolute deference to a state court's interpretation of its statutes as expressed through its denial of a habeas petition renders the constitutional guarantee of habeas corpus a meaningless one. But there is a great distinction between determining what a given state statute means, and determining that the state statute, as interpreted by the state court, violates a federal law or the federal constitution. While a federal court can never sanction state statutes that violate the United States Constitution, a federal court must allow states to construe their statutes as they see fit, without interference. Rejecting Virginia's interpretation of its own statute in this context "would compromise important principles of federalism, undermine state parole authorities, and install the federal judiciary as the final arbiter in yet one more area of state law." Vann, 73 F.3d at 522. With

4

state parole decisions in particular, "[i]t is difficult to imagine a context more deserving of federal deference. . . ." Id. at 521.

Thus, a federal court must take § 53.1-151(A) as the state court has interpreted it, and determine whether that statute, as so interpreted, places Scott "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a) (West 1994). Because Scott makes no claim that §53.1-151(A), as written or applied, was any different on the day of his first conviction than it is today, his ex post facto claim must fail. See Weaver v. Graham, 450 U.S. 24, 30 (1981) ("Critical to relief under the Ex Post Facto Clause is . . . the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.") (emphasis added).

For similar reasons, the VDOC has not deprived Scott of due process. State law creates any liberty interest Scott has in parole. See Franklin v. Shields, 569 F.2d 784, 788 (4th Cir.) (en banc) cert. denied, 435 U.S. 1003 (1978). Our role is merely to ensure that state-created rights have not been "arbitrarily abrogated." Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Because the VDOC has interpreted § 53.1-151(A) consistently with respect to suspended sentences, it has not "arbitrarily" denied Scott any statutory right.

In sum, the district court misinterpreted its role. Our jurisprudence dictates that on habeas, a federal court must accept a state's interpretation of its own statutes. Even when a federal court feels that the "plain meaning" of a statute requires an alternate interpretation, it must follow the state's interpretation. So long as a state's interpretation of its own statutory scheme is consistent and does not violate federal law in any other way,* a federal court can not grant habeas relief merely because it does not agree with the state Supreme Court's inter-

_____

*It is well settled law that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).

5

pretation of its own law. The district court's order granting a writ of habeas corpus is therefore

<u>REVERSED</u>.

6