NIEMEYER, Circuit Judge,
dissenting:
In affirming the grant of Dennis Le-Blanc’s habeas petition brought under 28 U.S.C. § 2254, the majority holds that the Virginia Supreme Court concluded unreasonably that Virginia’s geriatric release program provided a meaningful opportunity for release to juveniles and therefore satisfied the requirements of Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). Graham forbids sentencing juveniles to life in prison without parole for nonhomicide crimes. In reaching its conclusion, the majority relies simply on its expressed disagreement with the Virginia Supreme Court’s decision in Angel v. Commonwealth, 281 Va. 248, 704 S,E.2d 386 (2011), and effectively overrules it. The Virginia court’s opinion, however, is demonstrably every bit as reasonable as the majority’s opinion in this case and should be given deference under § 2254(d)(1).
After 16-year-old LeBlanc raped a 62-year-old woman in Virginia Beach, Virginia, in 1999, he was convicted in the Virginia Beach Circuit Court of abduction and rape. The court sentenced him in 2003 to life imprisonment on each count. While Virginia had, in 1994, abolished traditional parole for felony offenders, see Va. Code Ann. § 53.1-165.1, it had at the same time adopted a “geriatric release” program that allows for the conditional release of inmates who serve at least 10 years of their sentence and reach the age of 60, see id. § 53.1-40.01.
In 2010, the U.S. Supreme Court handed down its decision in Graham, where it held that “for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole.” 560 U.S. at 74, 130 S.Ct. 2011. The Court explained that a State must provide this class of juvenile offenders “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,” but that “[i]t is for the State, in the first instance, to explore the means and mecha *275 nisms for compliance.” Id. at 75, 130 S.Ct. 2011.
In its first" application of Graham, the Virginia Supreme Court held that the factors Virginia applies in considering candidates for geriatric release were the same as “the factors, used in the normal parole consideration process” and that, while Virginia’s geriatric release program had “an age qualifier,” it nonetheless afforded inmates, including juvenile offenders, “the ‘meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation’ required by the Eighth Amendment.” Angel, 704 S.E.2d at 402 (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011).
After Angel had been decided, LeBlanc filed a motion in the Virginia Beach Circuit Court to vacate his sentence as invalid under Graham. The Circuit Court denied his motion, relying on Angel to • conclude that Virginia had “an appropriate mechanism in place” to enable LeBlanc “to receive some form of parole.” But when Le-Blanc sought federal habeas relief under 28 U.S.C. § 2254, the district court granted LeBlanc’s petition, concluding, contrary to the Virginia court’s decision, that Virginia’s geriatric release program fell short of Graham’s requirements.
In now affirming, the majority unfortunately fails to respect, in any meaningful way, the deference Congress requires federal courts to give to state court decisions on postconviction review under § 2254. Under even a loose application of the governing standard in § 2254(d), a reviewing federal court would be constrained to conclude that the Virginia Beach Circuit Court’s ruling was not contrary to or an unreasonable application of Graham. See 28 U.S.C. § 2254(d)(1). To hold otherwise would require finding that the Virginia Supreme Court’s decision in Angel, as well as the Virginia Beach Circuit Court’s decision relying on it, amounted to an “extreme malfunction in the state criminal justice system.” Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624(2011). "
To reach its conclusion that Virginia’s geriatric release program does not provide juveniles with a meaningful opportunity. to, .obtain release, the majority conducts its own de novo review of the program, concluding that the program lacks “governing standards” for release. The majority, however, fails to recognize that our task on a § 2254 habeas petition is not to evaluate state parole systems de noyo but rather to determine whether the Virginia Supreme Court’s evaluation of its own program was an unreasonable application of Graham, see 28 U.S.C. § 2254(d)(1), which it clearly was not. Graham held that the Eighth Amendment forbids States from determining, at the time of sentencing, that a juvenile offender who did not commit a homicide “never will be fit to reenter society,” 560 U.S. at 75, 130 S.Ct. 2011 (emphasis added), and that such offenders must have “a chance to demonstrate growth and maturity,” id. at 73, 130 S.Ct. 2011. Analyzing the sufficiency of Virginia’s geriatric release program under Graham, the Virginia Supreme Court reasonably concluded that the program, which employs the same “factors used in the normal, parole consideration process,” provides nonhomicide juvenile offenders with “the ‘meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation’ required by the Eighth Amendment.” Angel, 704 S.E.2d at 402 (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011). While the majority may disagree . with the Virginia Supreme Court’s conclusion,' the fact that it was reasonable precludes LeBlanc from obtaining relief under § 2254.
*276 Moreover, beyond this case, the majority’s approach will encourage federal courts to scrutinize state policies and parole determinations under similar systems, a result that Congress clearly intended to forestall when it imposed the restrictions stated in § 2254. Indeed, the Supreme Court also sought to avoid this result by explicitly leaving the application of Graham to the States. See Graham, 560 U.S. at 75, 130 S.Ct. 2011 (noting that it is for the State “to explore the means and mechanisms for compliance”).
At bottom, when applying the prescribed standards to evaluate the Virginia court’s application of Graham, it is clear that Le-Blanc’s petition for a federal writ of habe-as corpus must be denied. I now address his petition under those standards.
I
During the morning of July 6, 1999, Dennis LeBlanc, who was at the time 16 years old, asked a 62-year-old woman, who was walking home from a grocery store, for a cigarette. After the woman told him that she did not smoke, LeBlanc pushed her down, dragged her to nearby bushes, raped her, and stole her purse. When police were later able to match LeBlanc’s DNA with that of the sperm sample taken from the woman, LeBlanc was charged and convicted in the Virginia Beach Circuit Court of rape, in violation of Virginia Code § 18.2-61, and abduction with intent to defile, in violation of Virginia Code § 18.2-48. He was sentenced to life imprisonment on each count in March 2003. The court noted that “the two offenses have to be some of the most serious charges I’ve ever heard about.” When imposing life imprisonment, the court did not mention parole, as traditional parole had been abolished in 1994 when the geriatric release program was adopted.* In response to the sentence given, LeBlanc told the court twice, “F-k you.”
More than seven years after LeBlanc’s sentencing, the Supreme Court decided Graham, holding for the first time that “for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole.” 560 U.S. at 74, 130 S.Ct. 2011 (emphasis added). The Court explained that while “[a] State [was] not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime,” it was required to provide the juvenile offender with “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” Id. at 75, 130 S.Ct. 2011. The Court, however, directed that “[i]t is for the State, in the first instance, to explore the means and mechanisms for compliance” with that command. Id.
After the Graham decision had been handed down, the Virginia Supreme Court considered whether Virginia’s geriatric release program satisfied Graham’s requirements, and it held that the program did so. See Angel, 704 S.E.-2d at 402. More specifically, the court explained that Virginia’s geriatric release program, as set forth in Virginia Code § 53.1-40.01, allows for the conditional release of inmates when they reach age 60 and have served 10 years and that “the factors used in the normal parole consideration process” apply to such determinations. Id. The court concluded that, “[w]hile [the geriatric release program] has an age qualifier, it provides ... the *277 ‘meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation’ required by the Eighth Amendment.” Id. (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011).
In May 2011, several months after Angel was decided, LeBlanc filed a motion in the Virginia Beach Circuit Court to vacate his life sentence as invalid under Graham. He contended that Angel was wrongly decided and that he did not indeed have a meaningful opportunity for release. The Circuit Court, however, denied LeBlanc’s motion, explaining:
[The] Supreme Court of Virginia has already looked at this issue in the Angel case and determined that there was an appropriate mechanism in place ... for a defendant to receive some form of parole as enunciated in [Graham], and they denied Mr. Angel’s appeal— The court feels and finds and is so ordering that there is an appropriate mechanism in place, that the sentence rendered back in 2003 for Mr. LeBlanc ... in which the defendant received two life sentences ... was the appropriate sentence ....
(Emphasis added). The Virginia Supreme Court summarily denied LeBlanc’s petitions for appeal and for rehearing.
LeBlanc filed this federal habeas petition pursuant to § 2254, contending again that the Virginia Supreme Court had wrongly decided Angel and that, based on statistics that he had presented to the state court, he had only a “remote possibility of release,” which did not amount to the “meaningful opportunity” for release required by Graham. A magistrate judge recommended dismissing LeBlanc’s petition, but the district court disagreed and granted the petition, ordering that the Virginia Beach Circuit Court resentence Le-Blanc. The district court concluded that “the state court’s decision was both contrary to, and an unreasonable application of, clearly established federal law set forth in Graham,” explaining that “[t]here is no possibility that fairminded jurists could disagree that the state court’s decision conflicts with[] the dictates of Graham.” The court noted further that the geriatric release program “falls far short of the hallmarks of compassion, mercy and fairness rooted in this nation’s commitment to justice.”
From the district court’s judgment, the respondents—the Commonwealth of Virginia and Randall Mathena, the Warden of Red Onion State Prison (collectively herein, the “Commonwealth” or “Virginia”)— filed this appeal.
II
The operative state court decision for our review is the decision of the Virginia Beach Circuit Court. See Grueninger, v. Dir., Va. Dep’t of Corr., 813 F.3d 517, 525 (4th Cir. 2016) (“‘looking] through’” the Virginia Supreme Court’s summary refusal to review the defendant’s appeal and “eval-uat[ing] the Circuit Court’s reasoned decision”). That decision concluded that Virginia’s geriatric release program provides an “appropriate mechanism” for implementing Graham. The Circuit Court relied on the Virginia Supreme Court’s opinion in Angel, which applied Graham and concluded that Virginia’s geriatric release program, which uses the “normal” parole factors for determining release, provided “the ‘meaningful opportunity to obtain released based on demonstrated maturity and rehabilitation’ required by the Eighth Amendment.” Angel, 704 S.E.2d at 402 (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011).
Faced with the district court’s contrary conclusion, we must decide whether the Circuit Court’s decision “was contrary to, *278 or involved an unreasonable application of,” Graham, 28 U.S.C. § 2254(d)(1).
A
First, to satisfy the requirement of § 2254(d)(1) that the state court decision be shown to be “contrary to” Graham, LeBlanc would have to show (1) that the state court “applie[d] a rule different from the governing law set forth in [Supreme Court] cases,” or (2) that it decided this case “differently than [the Supreme Court] [has] done on a set of materially indistinguishable, facts.” Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Therefore, “a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner’s case would not fit comfortably within [the] ‘contrary to’ clause.” Williams v. Taylor, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
In this case, no one can seriously argue that the Virginia Beach Circuit Court failed to correctly identify Graham as stating the applicable legal rule. In denying LeBlanc’s motion to vacate his sentence, the Circuit Court specifically discussed Graham, noting how “the U.S. Supreme Court in rendering its decision gave the court[s] guidelines to deal with defendants who were juveniles at the time of their offenses.” Because the Circuit Court operated under the correct U.S. Supreme Court rules and did not reach an opposite conclusion from the Supreme Court on a question of law, the argument that the Virginia Beach Circuit Court produced a decision “contrary to” Graham can survive only if the facts of Graham were “materially indistinguishable” from LeBlanc’s case. Bell, 535 U.S. at 694, 122 S.Ct. 1843. But LeBlanc cannot make this showing either.
Graham involved a juvenile offender convicted in Florida for a nonhomicide crime, who was sentenced to life in prison without any possibility of parole. As such, his sentence: . '
guarantee^] he will die in prison without any meaningful opportunity to obtain release, no matter what he might do to demonstrate that the bad acts he committed as a teenager [were] not representative of his true character," even if he [were to] spend[ ] the next half century attempting to atone for his crimes and learn from his mistakes.
560 U.S. at 79, 130 S.Ct. 2011. Because Florida had abolished its parole system, the life sentence gave Graham “no possibility of release unless he [was] granted executive clemency.” Id. at 57, 130 S.Ct. 2011 (emphasis added). The Court noted, however, that executive clemency provided Graham only a “remote possibility” of release, id. at 70, 130 S.Ct. 2011, and that Florida had effectively “denied him any chance to later demonstrate that he [was] fit to rejoin society,” id. at 79, 130 S.Ct. 2011. In these circumstances, the Court held that the Eighth Amendment prohibits the imposition of a sentence of life without the possibility of parole for juvenile offenders who commit nonhomicide crimes. Id. at 74, 130 S.Ct. 2011.
LeBlanc’s case differs materially. Unlike Florida law before Graham, Virginia’s geriatric law affords a juvenile sentenced to life imprisonment some opportunity, for release. The. geriatric law provides in relevant part:
Any person serving a sentence imposed upon a conviction for a felony offense ... who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole. Board for conditional release. The Parole Board shall promulgate regulations to implement the provisions of this section.
*279 Va. Code Ann. § 53.1-40.01. And the Virginia Supreme Court—the ultimate authority on Virginia law-r-has construed “[t]he regulations for conditional release under [§ 58.1-40.01] [to] provide that if the prisoner meets the qualifications for consideration contained in the statute, the factors used in the normal- parole consideration process apply to conditional release decisions .under this statute.” Angel, 704 S.E.2d at 402 (emphasis added). Thus, Le-Blanc cannot show that the facts in Graham, where the prisoner enjoyed no. opportunity for release outside of clemency, are materially indistinguishable from the facts of this case, where LeBlanc has an opportunity to be released by the. Parole Board.
B
Second, LeBlanc is also unable to demonstrate that the decision by the Virginia Beach Circuit Court, applying Angel, was an “unreasonable application of’-'Graham. See 28 U.S.C. § 2254(d)(1). To satisfy this requirement, LeBlanc would have to show that, even “if the state court identified] the correct governing legal principle from [Supreme Court] decisions,” it “unreasonably applied] that principle to the facts of the ... case.” Williams, 529 U.S. at 365, 120 S.Ct. 1495. And to show that the state court unreasonably applied governing legal principles, he would have to show that the state court’s decision was “ ‘objectively unreasonable,’ ” rather than “merely wrong” or involving “clear error.” White v. Woodall, — U.S. —-, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).
To emphasize the difficulty of meeting this standard, the Supreme Court has said that a prisoner would have to show “that the state court’s ruling on the claim being presented in federal court was so lacking in justification that there was-an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.”- Harrington, 562 U.S. at 103, 131 S.Ct. 770; see also id. at 101, 131 S.Ct. 770 (“A state court’s determination that a claim lacks merit precludes federal habeas relief so long as‘fairminded jurists could disagree’ on the correctness of the state court’s decision” (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004))). Not surprisingly, the rare decision finding § 2254(d)(1) satisfied typically arises from the misapplication of a long-established Supreme Court standard. See, e.g., Bompilla v. Beard, 545 U.S. 374, 389, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (finding it was objectively unreasonable for the state court to conclude that, under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), capital defense lawyer’s failure to consult prior conviction file that was certain to contain aggravating evidence was not ineffective assistance); Wiggins v. Smith, 539 U.S. 510, 527-28, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (similar for file containing mitigating evidence).
In this case, after-the Virginia Beach Circuit Court correctly identified Graham as the governing law, it applied that decision to the facts of LeBlanc’s case. In doing so, the Circuit Court considered the Graham requirement that States must provide a mechanism that affords a juvenile sentenced to life imprisonment “a meaningful opportunity for release.” Since the Graham Court stated that its holding applied only to juvenile offenders convicted of a nonhomicide crime and sentenced to life imprisonment without parole, Graham, 560 U.S. at 75, 130 S.Ct. 2011, and since the Virginia Supreme Court had held that the geriatric release program employed normal parole factors, the Circuit Court reasonably concluded that LeBlanc’s sentence did not violate Graham.
*280 Indeed, it strains credulity to conclude that the Circuit Court’s application of Graham was “so lacking in justification” that it fell “beyond any possibility for fairminded disagreement.” Harrington, 562 U.S. at 103, 131 S.Ct. 770. For one, Graham’s focus on the parallel between life without parole and the death penalty, see 560 U.S. at 69-70, 130 S.Ct. 2011, along with the Court’s indictment of life without parole as impermissibly deeming a “juvenile offender forever ... a danger to society,” id. at 72, 130 S.Ct. 2011 (emphasis added), suggests that the Court.saw no constitutional problem with state parole systems that allow for release only later in life. Indeed, the Court emphasized that “[tjhe Eighth Amendment does not foreclose the possibility that persons convicted of nonhomi-cide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.” Id. at 75, 130 S.Ct. 2011 (emphasis added). Thus, the state court was justified in reading Graham’s Eighth Amendment concerns as limited to traditional sentences of life without any possibility of parole.
Further, Graham did not define the bounds of its singular requirement that a juvenile must have “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.” 560 U.S. at 75, 130 S.Ct. 2011. Rather, in adopting “[a] categorical rule against life without parole for juvenile nonhomicide offenders,” id. at 79, 130 S.Ct. 2011, Graham declined to address what characteristics render a parole or release program “meaningful.” The Court did not dictate, for example, how frequently a parole board must meet regarding a juvenile nonhomicide offender or when, after a sentence is imposed on the offender, it must first begin meeting. Graham required only that, under a procedure that the Court did not specify, the offender be given a meaningful opportunity for release based on demonstrated maturity and rehabilitation. Given Graham’s leeway with respect to procedures and decisionmaking, the range of permissible state court interpretation is eommensu-rately broad. See Yarborough, 541 U.S. at 664, 124 S.Ct. 2140 (“[Evaluating whether a rule application was unreasonable requires considering the rule’s specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-ease determinations”). This is for good reason. Federal courts simply cannot be inserting themselves so deeply into state parole procedures that they effectively usurp the role of a state parole board. See Vann v. Angelone, 73 F.3d 519, 521 (4th Cir. 1996) (“It is difficult to imagine a context more deserving of federal deference than state parole decisions”).
Affording the proper deference to its .interpretation of Graham’s broad rule, it is readily apparent that the Virginia Beach Circuit Court operated well within its margin of error in concluding that Virginia’s geriatric release program provides a “meaningful opportunity to obtain release.” The program includes the Parole Board’s review of the inmate’s circumstances by considering a range of factors, such as:
• Whether the individual’s history, physical and mental condition and character, and the individual’s conduct, employment, education, vocational training, and other developmental activities during incarceration, reflect the probability that the individual will lead a law abiding life in the community and live up to all conditions of [geriatric release] if released;
• Length of sentence;
• Facts and circumstances of the offense;
*281 • Mitigating and aggravating factors;
• Inter-personal relationships with staff and inmates; and
• Changes in attitude toward self and others.
Virginia Parole Board Policy Manual 2-4 (Oct. 2006). These factors on their face allow for consideration of an offender’s maturity, rehabilitation, and youth at the time of the offense. Further, inmates such as LeBlanc know in advancé that the Virginia Parole Board will be considering these factors when it determines geriatric release so that “it is possible to predict, at least to some extent, when [geriatric , release] might be granted.” Solem v. Helm, 463 U.S. 277, 301, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Thus, the Virginia Beach Circuit Court’s conclusion, after applying Angel, that Virginia’s geriatric release law provided the meaningful opportunity to obtain release, certainly was not “an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington, 562 U.S. at 103, 131 S.Ct. 770; see also id. at 102, 131 S.Ct. 770 (“It bears repeating that even a strong case for relief does not mean the state court’s contrary conclusion was unreasonable”). To hold otherwise would require a finding in effect that the Virginia Beach Circuit Court judge and the Virginia Supreme Court justices failed to meet the definition of “fair-minded jurists.” See id. at 101, 131 S.Ct. 770.
LeBlanc concedes, as he must, that the geriatric release program provides some opportunity for release. He argues, rather, that the opportunity is not meaningful because of the low level of success shown by statistics. The statistics to which he refers, however, provide him with minimal support as they relate to older inmates and do not reflect the outcomes of offenders similarly situated to him. Given that Virginia’s parole reforms apply only to felony offenders who committed their crimes after 1994, juvenile offenders sentenced after 1994 will not gain eligibility for geriatric release for years to come, as they must first reach the age of 60. A 17-year-old juvenile offender who committed a nonhomicide offense in 1995, for example, would not become eligible for geriatric release until 2038. Because of this timing, relevant statistics for juvenile offenders simply do not exist.
I conclude that, just as the Virginia Beach Circuit Court did not rule “contrary to” Graham, it also was not an “unreasonable application of’ Graham to LeBlanc’s circumstances within the meaning of § -2254(d)(1).
Ill
Nonetheless, the majority, for purposes I do not fully understand, engages in an aggressive effort to prop up LeBlanc’s claim. To do so, it rests on its unsupported conclusions that Virginia’s geriatric release program does not adequately allow for release “based on maturity and rehabilitation”; that it does not account for youth as a mitigating factor; and that it lacks governing standards. Even if the majority’s rigorous, de novo scrutiny of the Virginia court’s reasoning did not defy § 2254(d)’s deferential standard of review, its conclusions are demonstrably mistaken on their own terms.
The majority first claims that Virginia’s program fails to provide any consideration for the “special mitigating force of youth,” ante at 272; see also ante at 270-71, and for an inmate’s progress with respect to “maturity and rehabilitation,” ante at 269-70. Yet, in the very same opinion, it contradictorily quotes the factors that the Parole- Board is required to consider in granting release under the program, noting that the Parole Board is to consider “certain” characteristics of the offender, *282 including “ ‘the individual’s history, physical1 and mental condition and character, ... conduct, employment, education, vocational training, and other developmental activities during incarceration,’ prior criminal record, behavior while incarcerated, and ‘changes in motivation and behavior.’ ” Ante' at 262 (emphasis added). Saying that these factors do not account for maturity and rehabilitation flaunts reason. But more importantly, the Virginia Supreme 'Court’s conclusion that Virginia law requires considerations of “normal parole factors” such as rehabilitation and maturity is one of state law and thus is binding on this court. And once it is understood that Virginia law requires consideration of maturity and rehabilitation, it follows that, under the § 2254(d) standard, Virginia’s geriatric release program satisfied Graham.
Second, the majority’s conclusion that the Virginia program lacks “governing standards” for release is puzzling in light of the majority’s own description of the Virginia, program, which includes a detailed description of the relevant standards:
The Geriatric Release Administrative Procedures set forth a two-stage review process for Geriatric Release petitions. [Id.] At the “Initial Review” stage, the Parole Board reviews a prisoner’s petition—which must provide “compelling reasons for conditional release”—and the prisoner’s “central file and any other pertinent information.” J.A. 287. The Parole Board may deny the petition at the Initial Review stage based on a majority vote. [Id.] Neither the statute nor the Geriatric Release Administrative Procedures states what constitute “compelling reasons for conditional release” nor does either document set forth any criteria for granting or denying a prisoner’s petition at the Initial Review stage. [Id.]
If the Parole Board does not deny a petition at the Initial Review stage, the petition moves forward to the “Assess- . ment Review” stage. [Id. at 288] As part of the Assessment Review, a Parole Board member or designated staff member interviews the prisoner. [Id.] During that interview, the prisoner may present written and oral statements as well as any written material bearing on his case for parole. The interviewer then drafts a written assessment of the prisoner’s “suitability for conditional release” and, based on that assessment, recommends whether the Parole Board should grant the petition. J.A, 288. In order to grant geriatric release to a prisoner sentenced to life imprisonment, at least four members of the five-member Parole Board must vote in favor of release. [Id.]
In engaging in the Assessment Review, Parole Board members should consider “[a]ll factors in the parole consideration process including Board appointments and Victim Input.” Id. The Virginia Parole Board Policy Manual includes a long list of “decision factors” to be considered in the parole review process. J.A. 297. These factors include: public safety, the facts and circumstances of the offense, the length and type of sentence, and the proposed release plan. [J.A. 297-99.] The Parole Board also should consider certain characteristics of the offender, including “the individual’s history, physical and mental condition and character, ... conduct, employment, education, vocational training, and other developmental activities during incarceration,” prior criminal record, behavior while incarcerated, and “changes in motivation and behavior,” J.A. 297-99. Finally, the Parole Board should consider impressions gained from interviewing the prisoner as well as information from family members, victims, and other individuals. [J.A. 300.]
*283 Ante at 261-62 (emphasis added; brackets in original).
The majority’s effort to bypass the “governing standards” that it quotes is, in essence, an argument that the Parole Board may not deny release without considering the juvenile offender’s maturity and rehabilitation and that the Parole Board must, on each application for release, explicitly consider maturity and rehabilitation, regardless of what is presented in the application. This argument, however, reads into Graham far more than the case actually holds. Graham does not dictate parole board procedures and decisionmaking. And, more particularly, it does not limit the permissible factors for denying release. Rather, it requires that the juvenile offender be given an opportunity for release based on “demonstrated maturity and rehabilitation,” imposing the burden on the juvenile offender to present evidence of maturity and rehabilitation and in turn requiring that the parole board have an ability to consider that evidence in deciding whether the offender should be released. Within this structure, therefore, when the Virginia Parole Board is presented with a juvenile offender’s application that makes a showing of maturity and rehabilitation, the Board is authorized, on the stated factors under which it operates, to grant release. This is just the meaningful opportunity that the Supreme Court describes in Graham. And Angel thus properly held that the Virginia Geriatric Release factors ’ provide that ability to grant release on demonstrated maturity and rehabilitation, particularly in stating that the Parole Board should consider the juvenile offender’s developmental activities during incarceration, his behavior while incarcerated, and the changes in his motivation and behavior.
Stated otherwise, under the majority’s view, to satisfy Graham a State would have to consider only the Graham factors in considering release, denying the Parole Board the opportunity to consider any of the non-Graham -factors that might be relevant to the juvenile offender’s application for release and the Board’s decision on that application, That aggressive reading of Graham would,- I think, surprise the Supreme Court that decided it. But more importantly, it certainly was not unreasonable for the Virginia Circuit Court to understand Graham as not mandating the precise factors that every parole board must -consider when reviewing juvenile offenders’ applications for release.
Th'e majority also faults the geriatric release program because it allows for longer sentences to juveniles than adults, relying simply on the fact that juveniles ‘commit their crimes earlier in life. See ante at 266-67, 272. It is a reality that a person who commits a serious crime at age 35 or, indeed, as a juvenile, will have the possibility of serving more years in prison than a person who commits the same crime at agé 62. But if that reality violates Graham, it is hard to see how any term-of-years sentence for a juvenile could withstand Eighth Amendment scrutiny; a young person’s chances of serving a full sentence are inherently higher than an older person’s.
Finally, the majority surmises that the Virginia Supreme Court in Angel expected that Angel would spend the rest of his life in jail and that therefore the court’s application of Graham was unreasonable because ‘this observation implied that early release would be “the exception, rather than the expectation.” Ante at 271. This ground for attacking the Virginia Supreme Court can rest' only on wild speculation, as no juvenile offender has yet been processed under the State’s geriatric release program, and the majority has pointed to no data to predict how the Parole Board will decide applications of juveniles for ear *284 ly release when they first qualify. Graham did not require that juveniles be released at any given time; it required that the juveniles be given a meaningful opportunity to prove themselves and to persuade the Parole Board to grant them release. If the Parole Board is given that authority by law, as the Virginia court found it is, then Graham is satisfied.
In short, the majority has reviewed de novo Virginia’s parole criteria based on its own expectations of how the system might work and has failed to appreciate that our sole task on a § 2254 petition is to determine whether the Virginia Supreme Court’s decision in applying Graham was unreasonable. And in fulfilling the task given by § 2254, it is not sufficient to show simply that the Virginia Supreme Court was wrong or even committed clear error; rather, it must be shown that the court erred in a manner “well understood and comprehended in existing law,” such that its error was “beyond any possibility for fairminded disagreement.” See White, 134 S.Ct. at 1702 (quoting Harrington, 562 U.S. at 103, 131 S.Ct. 770).
* ⅜ *
Because of the limitations of the Supreme Court’s holding in Graham, the directly relevant holding by the Supreme Court of Virginia in Angel, and the restrictions imposed by § 2254(d), we are simply not free to grant LeBlanc’s habeas petition. Unfortunately, the majority, in its adventuresome opinion, pays only lip service to the required standards of review. Were it to have applied them meaningfully, I submit, the judgment of the district court granting LeBlanc his habeas petition would have to be reversed and the case remanded with instructions to dismiss the petition.

The majority claims that LeBlanc was sentenced to “life imprisonment without parole,” ante at 260 (emphasis added), but its statement begs the question. LeBlanc was sentenced simply to life imprisonment, and, at the time, his sentence allowed for the possibility of release under Virginia's geriatric release program, leaving the question whether the program functions as a form of parole.