COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Malveaux, Athey and Senior Judge Petty


STEVEN W. GOODMAN

v.      Record No. 2233-23-3

CHADWICK DOTSON, ET AL.

MEMORANDUM OPINION[*]
PER CURIAM

STEVEN W. GOODMAN                                   APRIL 1, 2025

v.      Record No. 2236-23-3

CHADWICK DOTSON, ET AL.


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

(Steven W. Goodman, on briefs), *pro se*.

No brief for appellees.[1]


Steven W. Goodman ("Goodman") is a parole-eligible prisoner in the custody of the

Virginia Department of Corrections.  He appeals the dismissal by the Circuit Court of

Pittsylvania County ("circuit court") of his motion for judgment against the members of the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Appellees' brief was due on August 19, 2024, after this Court granted a fourth request for an extension of time.  Despite these extensions, appellees filed their brief one day late.  The same day, they requested a fifth extension and asked that "the Court determine the Brief of Appellees as timely filed."  The only good cause appellees offer for their fifth request is that they "attempted to file the Brief of Appellees on August 19, 2024, but inadvertently hit submit when the clock turned midnight on August 20, 2024, at which point the Virginia Appellate Courts Electronic System locked until 7:00a.m.," and appellees filed their brief at 7:33 a.m.  *See* Rule 5A:3(b).  But this Court approved four separate extensions of the deadline to file their brief, yet appellees did not ensure a timely submission of their brief.  Appellees' motion is denied.

Virginia Parole Board (the "Board") alleging that certain of the Board's rules are ultra vires and denial of his motion to reconsider the same. Finding no error, we affirm.[2]

## I. BACKGROUND

Goodman was placed in the custody of the Virginia Department of Corrections on July 8, 1992, to satisfy multiple life sentences plus 10 years and 42 months for convictions of forcible sodomy, sodomy, sexual assault, aggravated sexual battery, and other crimes. He became eligible for parole in September of 2008.

In May of 2023, Goodman filed a "Motion for Judgment" against the members of the Board, in their official capacities, alleging inter alia that Parole Decision Factors D, E, and F "are in conflict with, and exceed" statutory limits purportedly set forth at Code § 53.1-155(A). Stating that he was presenting "boilerplate administrative law claim(s)," Goodman asked the circuit court to "issue an order adjudging and declaring that Parole Decision Factors D, E, and F, set forth in Part I of the Parole Board Policy Manual, exceeds the statutory limits of the governing statute . . . and cannot be enforced"; "granting a permanent injunction enjoining the operation and enforcement of Parole Decision Factors D, E, and F"; and "directing the [Board] to immediately review [him] for parole consistent with" the foregoing. His first claim was a "Separation of Power Violation," his second a "Due Process Violation," and his third an "Ex Post Facto Violation."[3]

---

[2] Having examined appellant's briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal[s are] wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

[3] Goodman requested leave to amend his motion on June 28, 2023, arguing that Code § 53.1-136(1) is unconstitutional for the same reasons he argued that Code § 53.1-155(A) is unconstitutional. The Board filed a response to Goodman's "Motion for Judgment," to which Goodman objected. Goodman also requested a hearing on his objections and sanctions against the Board. Additionally, Goodman moved for Judge Moreau to be recused. Goodman objected again on November 7, 2023. All of these motions were denied, and Goodman does not assign error to any of these rulings on appeal.

On November 8, 2023, the circuit court dismissed Goodman's complaint. On November 14, 2023, Goodman asked the circuit court to amend its dismissal order to include Goodman's objections. Goodman moved the circuit court to reconsider its decision, which the circuit court denied on November 27, 2023. Goodman appealed the circuit court's final order and the denial of his motion for reconsideration.

## II. ANALYSIS

### A. *Standard of Review*

When reviewing the grant of a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the claimant." *Parker v. Carilion Clinic*, 296 Va. 319, 330 (2018). We review questions of statutory interpretation de novo. *See Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). And we review the circuit court's denial of Goodman's motion for reconsideration for an abuse of discretion. *Winston v. Commonwealth*, 268 Va. 564, 620 (2004).

### B. *The circuit court did not err in dismissing Goodman's complaint.*

Goodman argues that Code § 53.1-155(A) imposes a constraint that precludes the Board from considering the criteria set forth in Parole Decision Factors D (Sentence Data), E (Present Offense), and F (Prior Criminal Record). His assignment of error states that "[t]he circuit court erred when it dismissed Goodman's motion for judgment for failure to state a claim. Goodman demonstrated, with facts and law, in his motion for judgment that he not only stated a claim, but was also entitled to injunctive relief as a matter of law." He argues that his claim exists because "[i]t is beyond dispute that there is, in fact, a conflict" between the Parole Decision Factors D, E, and F, and Code § 53.1-155(A).

Although Goodman's original complaint asserts three different "claims," each one centers on an alleged material conflict between the policy manual issued by the Board and the statutory

scheme that creates the Board and gives it its authority. Goodman claims that this alleged conflict violates the separation of powers because the Board "usurped legislative power" when it implemented parole decision factors that "exceed[ed] the statutory limits of the [governing] parole investigation standard." He further argues the alleged conflict between the manual and the statute violates his due process rights, because "reliance on incomplete or incorrect information" and the "accuracy and sufficiency of the information" the Board obtains may affect parole determinations. Finally, he argues that this alleged conflict violates the ex post facto clause of the Virginia Constitution because the Board's consideration of these factors "creates a significant risk . . . of increasing [his] term of incarceration." Finding no conflict between Code § 53.1-155(A) and the policy manual, we disagree with Goodman and affirm the judgment of the circuit court.

We begin by interpreting the text of Code § 53.1-155(A). If the "words are clear and unambiguous, we do not rely on rules of statutory construction." *Crown Cent. Petroleum Corp. v. Hill*, 254 Va. 88, 91 (1997). However, "consideration of the entire statute . . . to place its terms in context to ascertain their plain meaning does not offend [this] rule because 'it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" *Eberhardt v. Fairfax Cnty. Emps. Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012) (quoting *Va. Elec. & Power Co. v. Bd. of Cnty. Supervisors*, 226 Va. 382, 387-88 (1983)). "The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results." *Branch v. Commonwealth*, 14 Va. App. 836, 839 (1992).

When considering an alleged violation of the separation of powers, Virginia applies the "whole power" doctrine, meaning that "the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other

- 4 -

departments." *Tross v. Commonwealth*, 21 Va. App. 362, 378 (1995) (quoting *Winchester & Strasburg R.R. Co. v. Commonwealth*, 106 Va. 264, 270 (1906)).  As it pertains to due process and parole, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Because parole in Virginia is a discretionary determination, the only due process requirements are that "[a]t most, . . . parole authorities must 'furnish to the prisoner a statement of its reasons for denial of parole.'"  *Vann v. Angelone*, 73 F.3d 519, 522 (4th Cir. 1996) (quoting *Franklin v. Shields*, 569 F.2d 784, 801 (4th Cir. 1978) (en banc)).  Beyond this, there is no constitutional requirement for each prisoner to "receive a personal hearing, have access to his files, or be entitled to call witnesses in his behalf to appear before the Board."  *Franklin*, 569 F.2d at 800.  To state a claim for a violation of the ex post facto clause, a plaintiff must plead facts showing the retroactive application of a new rule that "'by its own terms' or through 'practical implementation' creates a 'significant risk' of extending the period of incarceration to which he is subject."  *Burnette v. Fahey*, 687 F.3d 171, 184 (4th Cir. 2012) (quoting *Garner v. Jones*, 529 U.S. 244, 255 (2000)).  Article I, Section 9 of the Virginia Constitution states that "the General Assembly shall not pass . . . any ex post facto law."

Code § 53.1-155(A) provides, in relevant part, that

> [n]o person shall be released on parole by the Board until a thorough investigation has been made into the prisoner's history, physical and mental condition and character, and his conduct, employment, and attitude while in prison.  All information collected through such investigation shall be made available to the prisoner or his attorney [subject to certain conditions].  The Board shall also determine that his release on parole will not be incompatible with the interests of society or of the prisoner.

The Board adopted a policy manual pursuant to Code § 53.1-136(1), which states that "the Board shall . . . [a]dopt . . . general rules governing the granting of parole and eligibility requirements, which . . . shall require consideration of the prisoner's demonstrated rehabilitation,

economic and educational development, commitment to prosocial behavior, and community and family supports." This policy manual was adopted in 1998. The three factors from the policy manual that Goodman argues that offend Code § 53.1-155(A) are factors D (Sentence Data), E (Present Offense), and F (Prior Criminal Record).

Here, Goodman's argument hinges on his self-imposed classification of the statutory scheme involving the Board. He attempts to bifurcate Code § 53.1-155(A) into two separate "standards," with the first portion of the statute allegedly stating the "parole investigation" and the second supposedly articulating the "parole decision" standard. Goodman also argues that an examination into his "history, physical and mental condition and character" must only be limited to the time he spent in prison, stating that "[t]he words 'prisoner's' and 'while in prison' further limits the scope of the parole investigation to that period of time in which the 'prisoner's . . . in prison.'"

But Goodman's construction of the statute must bend to a natural and straightforward reading in light of common sense. *See, e.g.*, *Burns v. Sullivan*, 290 Va. 191, 192 (2015) ("[d]ivining legislative intent [from statutory text] is . . . an exercise in common sense interpretation of statutory language"); *Rock v. Commonwealth*, 76 Va. App. 419, 433 (2023) (noting in the statutory interpretation context that "straightforward language dictates a straightforward rule"). Code § 53.1-155(A) sets forth neither a two-step process nor a standard for the execution of that process. Rather, it simply assigns three tasks that the Board must accomplish before releasing a prisoner on parole. First, the Board must investigate "the prisoner's history, physical and mental condition and character, and his conduct, employment, and attitude while in prison"; second, it must apprise the prisoner or his counsel of the results of that investigation, subject to certain conditions; and finally, it must separately determine, to its own satisfaction, that the prisoner's "release on parole will not be incompatible with the interests of society or of the

prisoner." Code § 53.1-155(A). In the execution of these tasks, the Board may properly consider the criteria set forth in factors D, E, and F of its policy manual, particularly as the Board looks into 1) the prisoner's history, 2) the prisoner's physical and mental condition and character, and 3) the prisoner's conduct, employment, and attitude while in prison. Reading any of the above as "prisoner is" rather than as the possessive form of "prisoner" leads to a nonsensical and curious reading, while a plain reading of the language requires that the phrase "while in prison" only applies to the last item in the list, namely "his conduct, employment, and attitude." Allowing the Board to consider Goodman's sentencing data, his present offense, and Goodman's prior criminal record are all parts of his history, which is a statutorily permissible criterion for consideration. Accordingly, there is no conflict between the policy manual and Code § 53.1-155(A).

Having refuted Goodman's proposed construction of the statute, we next turn to the question of whether Goodman has sufficiently pleaded facts that would allow for relief. Although we accept facts as they are pleaded on demurrer, we do not accept legal conclusions, and Goodman's complaint is replete with such legal assertions that masquerade as factual statements. *See Parker*, 296 Va. at 330.

Turning to each claim, Goodman has not pleaded facts that sufficiently alleged a violation of the separation of powers, as there is no allegation that the Board is exercising the "whole power" of another branch of government. As to his due process claim, settled law holds that Goodman has no liberty interest in parole itself, only a bare interest in receiving due process if and when he is considered for parole. But Goodman does not claim in his complaint that he was denied parole based on an inadequate statement of facts from the Board or that a consideration of the factors was improper as it relates to a determination of his eligibility for parole, and as such, Goodman has not sufficiently pleaded facts as to this claim. Finally, the ex post facto clause only applies to laws, not to policy rules made by an agency. Va. Const. art. I, § 9; *see Hopt v. Utah*,

110 U.S. 574, 590 (1884) (noting that no ex post facto violation occurs if the change effected by the law does "not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt"). Even assuming without deciding that the ex post facto clause could conceivably apply to a policy rule promulgated by an agency—or applying the ex post facto challenge solely to Code § 53.1-155—because there is no legal conflict between the policy manual and Code, Goodman has not alleged sufficient facts that would show that the rule "by its own terms" would extend his period of incarceration. *See Garner*, 529 U.S. at 255. The only relevant factual allegations in Goodman's complaint are that the Board "investigates and considers" the policy manual factors in the "parole review process." These factual allegations on their face are insufficient to state a claim under any theory put forward by Goodman, because there is no conflict between the policy manual and Code § 53.1-155(A). As such there is no theory of relief on which Goodman could prevail.

Reviewing this question de novo, we find that there is no conflict between Code § 53.1-155(A) and factors D, E, and F of the Board's policy manual. Accordingly, because there is no legal conflict, Goodman's complaint as to each count fails to show a plausible entitlement to relief, and as such, the circuit court did not err in dismissing his complaint for failure to state a claim.

C. *The circuit court did not err in denying Goodman's motion for reconsideration.*

Goodman also assigns error to the circuit court's denial of his motion for reconsideration, asserting that it erred in its determination. We disagree.

Motions to reconsider are available where there is an "error apparent on the face of the record, or for the purpose of introducing after-discovered evidence." *Kirn v. Bembury*, 163 Va. 891, 901 (1935). Here, Goodman did not introduce any new evidence in his motion for reconsideration. And, as aforementioned, we find no "error apparent on the face of the record"

of the circuit court's determination.  Therefore, we conclude that the circuit court's denial of Goodman's motion for reconsideration did not constitute an abuse of discretion.

### III.  CONCLUSION

For the reasons herein stated, we affirm the judgment of the circuit court.

*Affirmed.*